9681

ERSKINE v. ERSKINE *ET AL.*

(92 S. E. 465.)

</div>

1. WILLS—CONTRACT TO MAKE WILL—EVIDENCE—SUFFICIENCY.—In an
action to enforce against executors and legatees of the estate of his
mother an alleged contract whereby mother was to make plaintiff
equal by her will, evidence *held* insufficient to prove the contract
alleged by the measure of proof required in such case.

2. EQUITY—ISSUES FOR JURY—DENIAL—DISCRETION OF COURT.—In actions
in equity, although parties comply with the statute and rule 28 of
the Circuit Court, denial of a jury trial is by express terms of Code
Civ. Proc., sec. 312, within the discretion of the Court.

3. APPEAL AND ERROR—DENIAL OF JURY TRIAL—ABUSE OF DISCRETION.—
Denial of a jury trial in an equity suit will not be disturbed on
appeal, in the absence of a showing of prejudice by the party com-
plaining.

4. APPEAL AND ERROR—REVIEW—HARMLESS ERROR.—Error cannot be
predicated upon exclusion of an answer where no prejudice is shown.

Before PRINCE, J., Anderson, August, 1916.    Affirmed.

Action by Joseph N. Erskine against J. J. Erskine and
others.    Judgment for defendants, and plaintiff appeals.

The opinion of the Circuit Court is as follows:

The plaintiff seeks by this action to enforce against the
executors and legatees of the estate of his mother, Mrs.

---

FOOTNOTE.—As to specific performance of contracts with reference to
disposition of property at death, see notes in 44 L. R. A. (N. S.) 733 to
772, A. & E. Ann Cas. 1914a, 399.

Margaret M. Erskine, an alleged contract made between him and his mother. The substance of his claim is that Mrs. Erskine on the 8th day of April, 1905, conveyed to him the tract of land described in the complaint, and that thereafter, at her urgent request, he entered into an agreement with her whereby he was to convey the said tract of land back to her and she was at her death to bequeath and devise to him by will an equal share of her estate with her other children, and that pursuant to this contract he conveyed the said tract of land back to her on December 24, 1910, and that the last mentioned deed expresses as the consideration thereof "love and affection," and the sum of $10, but that the real consideration was the said contract that she would make him equal by her will with her other children, and that she died leaving her last will and testament and bequeathed him the sum of $500 only, which was less than an equal share with the other children, and that she had thereby breached her contract with him.

The answer of the minor, Pierce McConnell, is the usual formal answer of his guardian *ad litem*. The answers of the other defendants deny the alleged contract, and also allege that after Mrs. Erskine signed the paper dated April 8, 1905, whereby the said tract of land was conveyed to the plaintiff, she was about to bring suit against him to cancel and set the same aside, and that the plaintiff in order to avoid such suit being brought against him by his mother and in order to satisfy her as recited in his deed to her and in consideration also of his love and affection for her, executed the deed of December 24, 1910, conveying the land back to her, and that this was the real consideration of this deed, and not the consideration stated by plaintiff in his complaint. The answers further set forth as a second defense the statute of frauds in regard to real estate, and as a third defense the statute of frauds in regard to personal property.

The plaintiff made a motion in accordance with rule 28 of this Court to refer certain issues of fact to a jury, and this

motion was resisted by the defendant. After hearing argument upon the motion, I came to the conclusion that issues should not be referred to a jury under the statute of this State providing for submitting issues to a jury in equity cases. I then refused and overruled the plaintiff's motion to submit issues to a jury. The plaintiff's counsel then suggested that the chancellor might desire as the cause progressed to refer issues to a jury of his motion for the enlightenment of his conscience, and that it would save delay in the hearing of the cause for the chancellor to refer such issues at that time before the juries were discharged, and thus probably avoid a continuance of the case. In this view of the matter, I decided to refer to a jury on my own motion under the general power of the Court as a Court of equity, and for the enlightenment of my conscience sitting as the chancellor in the cause, two issues of fact, as follows, to wit: (1) Did Joseph N. Erskine and his mother mutually agree that if Joseph would reconvey to her the tract of land described in the complaint she would, in consideration of such conveyance, give him by her will an equal share in her estate along with her other children? (2) If there was such an agreement, was it oral or in writing?

The testimony in the cause was then taken, and the jury answered the first question in the affirmative, and in answer to the second question stated that the agreement was oral. The verdict of the jury being merely advisory, the case was then heard by me sitting as chancellor, upon all of the testimony and evidence in the cause, and was fully argued by counsel on both sides.

There are certain facts in the cause that are undisputed, and are as follows:

On April 8, 1905, the decedent, Mrs. Margaret M. Erskine, conveyed to her son, the plaintiff, the tract of land described in the complaint (reserving to herself a life estate), upon condition that within three months after her death the plaintiff should pay to her son, J. J. Erskine, or

his heirs or assigns, $500, and to her daughter, Mary
McConnell, or her heirs or assigns, $500, and to the children
of a predeceased daughter, their heirs and assigns, $500, and
it is not claimed that the plaintiff paid any money for this
deed, or that there was any consideration for it, other than
what is expressed in the deed itself.  Afterwards she became
dissatisfied about the matter, and some time during the year
1910 employed the firm of Quattlebaum & Cochran to obtain
a conveyance to this land, or to bring suit for the cancella-
tion of this deed.  Mr. Quattlebaum had an interview with
plaintiff, and it appears from the dates in the letters and
documents hereinafter referred to that this interview took
place on Saturday, December 17, 1910.  The plaintiff agreed
with Mr. Quattlebaum at that time to execute a deed recon-
veying the property to his mother, and it appeared that this
deed was to be executed on the following Monday, but for
some reason was not executed at that time, and on the fol-
lowing Wednesday, December 21st, Mr. Quattlebaum wrote
the plaintiff a letter, which has been put in evidence, and in
this letter stated, among other things, that unless the deed
was executed before December 28, 1910, suit would be
brought to cancel the deed Mrs. Erskine had executed to
plaintiff.  On the following Saturday, December 24, 1910,
the plaintiff went to Mr. K. P. Smith and stated that he felt
offended with Mr. Quattlebaum on account of some state-
ment in the letter, and requested Mr. Smith to obtain the
deed which Mr. Quattlebaum had prepared for him to sign.
Mr. Smith went to Mr. Quattlebaum, obtained the deed
which he had prepared, and thereupon on the same date,
December 24th, plaintiff executed the deed before Mr.
Smith, and it was probated on the same date, to wit, Decem-
ber 24th, before Mr. Smith as notary public.  The body of
the deed is in Mr. Quattlebaum's handwriting, with the
exception of the figures in the date of the deed, viz., "24th,"
and these figures are in Mr. Smith's handwriting.  The
date of the probate is December 24, 1910, before Mr. Smith

as notary public, and the probate is in his handwriting. The renunciation of dower is in Mr. Smith's handwriting, and is dated December 30, 1910. From Mr. Smith's testimony it appears that the plaintiff's wife was not present on the 24th day of December when the deed was executed, but came in later and renounced her dower, and shortly thereafter, Mr. Smith delivered the deed to Mr. Quattlebaum, who had it recorded for Mrs. Erskine.

Mrs. Erskine died some time in the month of April, 1915. By her will, which is dated April 23, 1912, she directs that all of her estate, real and personal, should be sold by her executors, and after the payment of debts and expenses, etc., her executors should pay the plaintiff, Joseph N. Erskine, the sum of $500, and the balance should be divided equally among her other living children and the children of a deceased daughter; that is, one share to her daughter, Mary McConnell, one share to her son, J. J. Erskine, who lives in Texas, and the third share should go to the children of the deceased daughter. The will also makes bequests of certain wearing apparel and personal effects, etc., which it is not necessary to set forth in detail. At the time of her death Mrs. Erskine owned and possessed the tract of land mentioned in the complaint containing about 119 acres and worth in round numbers about $10,000. She also owned personal property which, according to the returns of the executors, was of the gross value of $3,531.86, subject to a deduction of $466.84, the amount paid out in debts, expenses and commissions.

The facts above set forth are practically undisputed, and the real contest is over the question whether the plaintiff had a contract with his mother, whereby, in consideration of his reconveying to her the land in question, she was to make him equal with her other children by her will. Before considering this question, I will first consider the question of admissibility of certain testimony which was objected to by the defendants.

At the trial of the cause, the plaintiff introduced in evidence both of the deeds hereinabove referred to, and then offered testimony of certain witnesses of a certain statement or admission of Mrs. Erskine in her lifetime, to show that the real consideration of the deed by which he reconveyed the land to her was a contract or agreement on her part with him to make him equal by her will with her other children. The defendants' attorney objected to any parol testimony on that line on the ground that it was not competent to show by parol any consideration for the deed by which plaintiff reconveyed the land to his mother, other than the consideration stated therein, that the consideration stated in the deed was love and affection, which is a good consideration, and a nominal consideration of $10, and that the defendant could not show that the real consideration of the deed was the contract in question, as that would be a valuable consideration, and would contradict or vary the deed.

The defendants' attorneys cited in support of their objection the case of *Latimer* v. *Latimer,* 53 S. C. 483, 31 S. E. 304, reaffirmed in *Lavender* v. *Daniel,* 58 S. C. 133, 36 S. E. 546, and *Whitman* v. *Corley,* 72 S. C. 410, 52 S. E. 49. I overruled this objection and admitted the testimony of W. A. Hewin and his son, Fred Hewin, along that line. However, upon considering the question more fully and reading the Latimer case again, I have come to the conclusion that I was in error in admitting this testimony. My impression was at the time that the decision in the Latimer case was based upon the words "give" and "giving," which were used in the deed in that case. I find, however, that the decision was not put upon that ground. The Court upon that point said: "We lay no great stress on the use of the words 'give' and 'giving' though those words are exactly in accordance with the consideration stated in the deed, and with the declared object of the conveyance."

The Latimer case was decided upon the ground that, when no fraud is alleged, it is not competent to show by parol that

a deed purporting to be based upon a good consideration, as natural love and affection, is really based upon a valuable consideration.   I am unable to distinguish this case from the Latimer case.   It is not alleged anywhere in this case that there was any fraud practiced upon plaintiff in obtaining the deed from him.   In the Latimer case the deed stated the consideration as natural love and affection and a nominal consideration of $5.   The deed in this case states the consideration as natural love and affection and a nominal consideration of $10.   The deed in the Latimer case was executed for a purpose specified therein, viz., to bestow a bounty upon the nephew of the grantor.   The deed in this case recites that it was executed for the specific purpose of satisfying his mother and in consideration of his natural love and affection for her.   Neither in the Latimer case nor in this case does the deed state any valuable consideration.   The plaintiff's attorneys argue that the deed in this case recites that it was in consideration of the premises set forth, but an examination of the recitals set forth in the premises shows that none of those recitals could constitute a valuable consideration.   The plaintiff's attorneys argue that the Latimer case should not control the case at bar, but that the case of *Alexander* v. *McDaniel,* 56 S. C. 252, 34 S. E. 405, would govern the decision here, as it is a later decision than the Latimer case.

I cannot see anything in the case of *Alexander* v. *McDaniel* that changes the rule laid down in the Latimer case.   In *Alexander* v. *McDaniel* the Supreme Court says: "As to the tenth exception, we see nothing in the case which shows that the parties requested the Circuit Judge to pass upon any questions of competency of testimony.   Besides, this exception is too general, and we overrule it on that ground."   It thus appears that the question of the competency of any testimony was not decided by the Court in that case.   Moreover, there is nothing in the case of *Alexander* v. *McDaniel,* as reported, to show that the deed then under consideration

was based upon natural love and affection, but, on the contrary, the consideration of the deed is stated to have been "for and in consideration of the sum of $5 and other valuable considerations." The case of *Alexander* v. *McDaniel* makes no mention of the Latimer case, and if the Supreme Court intended to modify or change the rule in the Latimer case, they surely would have mentioned that case. In addition to this, however, there were two cases which are later than the case of *Alexander* v. *McDaniel,* which expressly reaffirm the principle laid down in the Latimer case, viz.: *Lavender* v. *Daniel,* 58 S. C. 133, 36 S. E. 546, and *Whitman* v. *Corley,* 72 S. C. 410, 52 S. E. 49. No decision by our Supreme Court has been called to my attention which in any way shakes the authority of the Latimer case, and I am unable to distinguish that case from the case at bar. I must conclude that I was in error in admitting the testimony of W. A. Hewin and his son, Fred Hewin, in so far as they testified to statements of Mrs. Erskine tending to show an oral contract between her and her son, the plaintiff. But even if I am in error in concluding that the testimony of the two Hewins, relative to the statement made by Mrs. Erskine, should have been excluded, I still find that the plaintiff has failed to establish his case. Having reached this conclusion, upon due consideration of all of the evidence in the case, including the testimony of the two Hewins referred to, and as the verdict of the jury is merely advisory and not binding upon me in this case, I shall disregard the finding of the jury, and their verdict is hereby set aside. I shall, therefore, now proceed to consider the case, treating all the evidence and testimony as properly before me, and giving all of it due consideration, including all the testimony given by the Hewins. It is proper, however, that I should advert to certain general principles of law governing cases of this character which have been laid down by our Supreme Court.

There is no doubt that a person may make a valid contract to make a will, and such a contract may be oral or

written. But such a contract, especially when it is attempted to be established by parol, is regarded with suspicion, and not sustained, except upon the strongest evidence that it was founded upon a valuable consideration and deliberately entered into by the decedent. The evidence to sustain it should be received and scrutinized with the greatest care. The terms of such an agreement should be definite and certain and established by evidence clear and convincing. It has also been said by our Supreme Court that the terms of the agreement should be unambiguous and definitely ascertained. *Dicks* v. *Cassells,* 100 S. C. 348, 87 S. E. 878, and cases cited; *Wilson* v. *Gordon,* 73 S. C. 160, 53 S. E. 79; *McKeegan* v. *O'Neill,* 22 S. C. 468; *Church* v. *Farrow,* 28 S. C. Eq. (7 Rich. Eq.) 383.

Under the principles laid down by our Supreme Court, I find that the evidence in this case falls far short of sustaining the plaintiff's alleged contract. The plaintiff relies mainly upon the testimony of F. L. Brown and the two Hewins, in connection with the other circumstances disclosed by the evidence. As to the evidence of F. L. Brown, I cannot see how it has any real bearing upon the alleged contract. His evidence simply is that Mrs. Erskine expressed an intention at one time to make the plaintiff equal by her will with her other children, but she said nothing in her conversation with Mr. Brown from which it could be inferred that there was any contract. The two Hewins testified in substance that some time the later part of September, 1911, Mrs. Erskine had a conversation with the elder Hewin, in which she said that she had proposed to her son, the plaintiff, that if he would deed the land back to her she would make him equal with her other children and fix it in her will. The elder Hewin testified that he never told any one about the conversation, and that the way the plaintiff found it out was that Mrs. Erskine herself told the plaintiff about it, and then the plaintiff came to him and asked him if he remembered the conversation. The younger Hewin testified that he never

16—107.

told any one of the conversation except the plaintiff, and that the plaintiff did not come to him until after the death of Mrs. Erskine, and that he never thought much about the conversation from that day to the present time. Neither the elder nor the younger Hewin had any special interest in the matter. Now, the conversation, according to their testimony, occurred in September, 1911, and Mrs. Erskine died in April, 1915, and the witnesses testified in June, 1916. It is highly improbable that these witnesses could remember after such a lapse of time the details and almost the very words of a conversation in which they had no special interest which they had no particular reason to remember, and which they had never told anybody except the plaintiff, who did not get his first information from them, but from his mother herself. It would indeed be a most remarkable circumstance that Mrs. Erskine herself would be the one to inform plaintiff of this conversation. The elder Hewin said that this conversation was in response to his inquiry as to why the plaintiff was leaving his mother's place, but the answer that he says Mrs. Erskine made is entirely unsatisfactory as a reason that the plaintiff should leave. Indeed, if it were true that she had proposed to her son to reconvey the land, and she would make him equal with her other children by her will, it would appear that any differences between her and her son would then be harmonized, and would furnish a reason for him to stay rather than to move away from her place. A change of a word or two in the conversation testified to by the Hewins would put the matter in an entirely different light. The witnesses may have forgotten some other part of the conversation which would have shown that no contract really existed. But the intrinsic weakness of the testimony of the two Hewins is too apparent for extended discussion. It is not satisfactory, and after considering it the mind is still uncertain, still unconvinced, and still hesitates to say that a contract really existed. But when we weigh the evidence of the Hewins

with the documents on evidence and other testimony in the case it becomes certain that the plaintiff has failed to make out his case. The most that can be claimed for the evidence of the Hewins is that there was no admission by Mrs. Erskine from which it might be inferred that a contract existed, but the recitals in the deed by which her son conveyed the land to her and the evidence in the case, written and oral, as to the circumstances under which the deed was executed, afford a far stronger inference that the deed was made because suit had been threatened and the plaintiff, from the natural love which a son has for a mother, was unwilling to engage in such a suit, and, therefore, executed the deed to her. The plaintiff does not deny in his testimony that he had a conversation with Mr. Quattlebaum, and agreed to execute the deed, without mentioning anything about any contract with his mother in reference to her will. From the dates in the documentary evidence and the testimony, this interview must have been on Saturday. Mr. Quattlebaum's letter threatening suit was written the following Wednesday, and on the following Saturday the deed was executed. The sequence of these events attending the excution of the deed, together with the recitals of the deed and the letter from Mr. Quattlebaum to the plaintiff, tend very strongly to show that the deed was executed in order to satisfy his mother whom he loved and to prevent suit, and was not executed in consideration of a contract on the part of his mother to make him equal by her will with her other children. I do not think that the slight inference which may be drawn from the testimony of the two Hewins sufficient to overcome the strong inference drawn from the circumstances attending the execution of the deed. It must be borne in mind in this connection that our Supreme Court, in *Dicks* v. *Cassells, supra,* and again in *Wilson* v. *Gordon, supra,* has said: "When an intention is reduced to writing, either in the form of a will or a contract, there is always a strong implication of fact that the whole intention has been expressed, and an

implication still stronger that there is no agreement or inten-
tion contrary to that expressed." I do not think that the
inference sought to be drawn from the oral testimony of the
Hewins, subject as it is to all the uncertainties which accom-
pany oral testimony, especially in regard to matters long
since past and likely more or less forgotten, can overcome
the strong implication contained in the written document
prepared and executed at the time, under the direction of the
parties themselves, especially when the circumstances attend-
ing the execution of the document tend strongly to confirm
its recitals. The more reasonable view is that the two
Hewins from lapse of time and imperfect recollection as to
the exact words used are mistaken in their testimony.

The uncontradicted evidence shows that Mrs. Erskine
was a very strong-minded woman. It is not likely she
would have deliberately breached her contract, especially a
contract made with her own son who lived with her so many
years. The more probable view is that a woman of her
strong character would have carried out her contract, if she
had any, and that the real reason why she didn't give plain-
tiff as much by her will as her other children was because,
as stated by her in the will, she considered that she had
already given him, in various ways, as much as the other
children would receive. But, be that as it may, if she was
not under any contract with her son, she had, of course, the
right to make her will in any way she pleased.

There is one point upon which the testimony of the
Hewins is at variance with the testimony of F. L. Brown,
one of the plaintiff's witnesses. The Hewins testified that
in September or October, 1911, when they talked with Mrs.
Erskine, she said that her son had treated her all right, but
Mr. Brown said, in her conversation with him in July or
August, 1911, she had a great deal to say about how her son
had mistreated her, though Mr. Brown did testify that she
further stated that she intended in spite of that to make him
equal with the others. Moreover, it is strange that Mrs.

Erskine should have never, so far as the evidence shows, made any allusion to any supposed contract except on the one occasion testified to by the Hewins. If she discussed the matter with them, surely she would have discussed it with some of her other neighbors. She discussed her business relations with her son with F. L. Brown, but in that conversation she never said a word about any contract or agreement or anything from which it would possibly be inferred that there was any such contract.

It is a very significant fact that so far as the evidence shows it does not appear that the plaintiff ever made any claim of a contract until the suit was brought. He did not file any claim of contract with the executors. After his mother's death he talked about the settlement of the estate with his brother from Texas, J. J. Erskine, with Mr. Casey, one of the executors, with his sister, Mrs. McConnell, who is an executrix under the will, and with Mr. McConnell, his brother-in-law, and he admits that he never mentioned having a contract to any of them. The first intimation of a contract, so far as the evidence discloses, was when suit was filed.

Upon the whole case, considering and treating all the evidence and testimony, including the testimony of both the Hewins, as properly before me and giving to the same all the weight and effect to which it may be entitled, I conclude that the plaintiff has failed in his contention that there was a contract between him and his mother as set forth in his complaint, and I, therefore, find and hold that the plaintiff has failed to establish any contract or agreement between him and his mother, Mrs. Margaret M. Erskine, whereby she should make him equal by her will with her other children, and has failed to establish that his execution of the deed reconveying the property to her was in pursuance of such a contract or agreement.

The defendants have pleaded the statute of frauds as regards both the realty and personal property. Inasmuch

as I have found that the plaintiff has not sustained his claim of contract or agreement, it is not perhaps necessary that I should pass upon the question raised by the plea of the statute of frauds; but in order that all questions raised in the case may be disposed of, it is perhaps proper that I should state my views upon this question also.   I do not sustain the defendant's plea of the statute of frauds.   As to the sections of the statute of frauds which refer to transactions covering real estate, I do not think they are applicable to this case, because the will directs the conversion of the real estate into personal property, and in equity, therefore, the real estate will be treated and considered as personal property.   As to the section of the statute of frauds which refers to transactions concerning personal property, I think this section would be applicable to the case at bar, but I think that the execution of the deed on the part of the plaintiff would be such part performance as would take the case out of the statute of frauds, provided the plaintiff had established his contract as claimed in the complaint, and had shown that the deed was executed by him in pursuance of the contract; but inasmuch as I have found that he did not have such a contract as claimed by him, and the deed was not executed in pursuance of any such contract, I think that it becomes unnecessary to decide the question of the applicability of the statute of frauds and the effect of part performance.

Having found, as above set forth, that the plaintiff has failed to establish his alleged contract or agreement and has failed to make out his case, it is, therefore, ordered, adjudged and decreed that the complaint herein be dismissed, and that the defendants be allowed their proper costs.

Since the above was written, I have read a manuscript copy of the decision of the Supreme Court in the case of *Kerr* v. *Kennedy et al.,* filed July 27, 1916, 105 S. C. 496,

90 S. E. 177, and I find nothing in this case which contravenes any of the views hereinabove set forth.

*Messrs. Greene & Earle* and *Bonham, Watkins & Allen,* for appellant. *Messrs. Greene & Earle* cite: *As to refusal of motion to submit issues to jury:* 5 S. C. 412; 72 S. C. 578; 98 S. C. 212; 76 S. C. 507. *As to contract to make will:* 22 S. C. 461; 57 S. C. 565; 94 S. C. 271. *As to proof of contract; declarations:* 14 Enc. Ev. 523; 53 N. Y. Supl. 376; 92 Kan. 652; 52 L. R. A. (N. S.) 1058. *Circumstantial evidence:* 73 S. C. 160; 3 Enc. Ev. 516, 517 and 518; 77 Kan. 700; 52 L. R. A. (N. S.) 1059. *Parol evidence showing purpose of deed:* 21 A. & E. Enc. of L. (2d ed.) 1094, note 7; 6 Rich. L. 118; 10 R. C. L., sec. 237; 81 Ohio St. 289; 90 N. E. 805; 25 L. R. A. (N. S.) 1194; 2 Hill Eq. 558; 193 Pa. St. 447; 74 Am. St. Rep. 694. *Evidence as to consideration:* 1 McC. 514; 72 S. C. 411; 58 S. C. 125; 9 N. J. Eq. 332; 16 Cyc. 382. *And generally as to proof of such contracts:* 56 S. C. 260; 68 S. C. 106; 16 S. C. 357; 22 S. C. 26; 31 S. C. 313; 26 S. C. 316; 41 S. C. 163; 58 S. C. 284; 92 S. C. 228; 35 S. C. 548; 41 S. C. 345. *Declarations of grantor at time of execution of deed:* Jones Ev. Civil Cases, p. 490, note 3; 11 Enc. Ev. 410, note 18; 91 Ind. 511; 39 W. Va. 35; 45 Am. St. Rep. 884; 125 Mich. 311; 84 N. W. 311; 1 Johns Ch. (N. Y.) 119; 85 Ill. 88. *Equitable conversation and statute of frauds:* 9 Cyc. 830; 62 S. C. 482; 35 S. C. 531; 23 S. C. 382. *Part performance:* 20 Cyc. 302; 57 S. C. 576.

*Messrs. Bonham, Watkins & Allen* cite: *As to refusal of motion to direct issues:* Code Civ. Proc., sec. 312; 98 S. C. 212; 76 S. C. 50; 50 S. C. 282. *Parol contract to make will:* 94 S. C. 273; 22 S. C. 454; 3 DeS. 390; 2 DeS. 185; 48 S. C. 86; 73 S. C. 159. *Part performance and statute of frauds:* 56 S. C. 252; 57 S. C. 575 and 559. *Parol testimony to show consideration of deed:* 72 S. C. 411; 20 L.

R. A. 101; 81 Ohio St. 289; 25 L. R. A. (N. S.) 1194; 6 A. & E. Enc. of L. 707; 110 N. W. 232; 35 N. W. 817; 41 S. C. 320, 345; 68 S. C. 106; 16 S. C. 352; 26 S. C. 316; 2 Hill Ch. 552; 35 S. C. 548.

*Messrs. Ernest F. Cochran* and *Watkins & Prince,* for respondent, submit: *Direction of issues was matter of judicial discretion:* Code Civ. Proc., sec 312; 82 S. C. 150; 56 S. C. 303; 55 S. C. 276; 90 S. C. 452; 78 S. C. 193; 49 S. C. 355; 43 S. C. 264; 94 S. C. 499.　*Findings of fact:* 51 S. C. 420; 41 S. C. 546.　*Character of evidence to prove contract:* 100 S. C. 348, 351; 73 S. C. 160, 164; 22 S. C. 468; 7 Rich. Eq. 383.　*Where deed recites only a good consideration, parol evidence is inadmissible to show any other:* 53 S. C. 483; 58 S. C. 133; 72 S. C. 410; 83 S. C. 204; 2 Strob. Eq. 154; 80 S. C. 43; 103 S. C. 253.　*Showing compentency:* 103 S. C. 363.　*Statute of frauds applicable:* 57 S. C. 559; 5 L. R. A. 325; 15 L. R. A. (N. S.) 466.

May 17, 1917.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

The facts of the case are fully stated in the opinion of the Circuit Court, which will be reported.　It is unnecessary for us to decide whether the Circuit Court erred in holding the testimony of the Hewins incompetent, because this Court waived objection to their testimony, and, after giving it due consideration, reached the conclusion, in which we concur, that, upon consideration of all the evidence, including that of the Hewins, plaintiff failed to prove his case by that measure of proof required in cases like this, which is stated in the decisions cited by the Circuit Court.

We concur, also, with the Court below that, in actions in equity, the parties are not entitled, as a matter of right, to

trial by jury.   Even when they comply with the statute and rule 28 of the Circuit Court, the matter is still, by express terms of the statute (section 312, Code Civ. Proc.), in the discretion of the Court (*Osteen* v. *Bultman,* 90 S. C. 452, 73 S. E. 874, and cases cited by the Court).   It is well understood that this Court will not interfere with the exercise of discretion by the trial Court, unless it is made to appear that its exercise was not only manifestly erroneous, but also prejudicial to the party complaining. · There was no such error here.

It appears that the deed from appellant to his mother was executed in the office of Mr. K. P. Smith, who testified that he cautioned appellant as to what he was doing, and told him the effect of it, and that appellant replied that he understood what he was doing.   On further examination of the witness by appellant's attorney, the record shows the following, which is the basis of an assignment of error in excluding the answer to this question:

"Did he or not, at the time he stated he knew what he was doing, say anything about a contract with his mother?   Mr. Cochran: That would be a self-serving declaration.   The Court: You can't prove a contract that way.   Objection sustained."

Appellant contends that the answer should have been admitted as part of the *res gestae.*   We have held in numerous cases that the burden rests upon one asking this Court to reverse a judgment to show not only that there was error, but also that it was prejudicial to him.   Now in this case appellant acquiesced in the ruling of the Court without even suggesting the ground upon which he now contends the evidence was admissible.   He should have suggested that ground of admissibility to the trial Court and asked for a ruling upon it.   But there is another reason why it cannot avail appellant.   It does not appear that the exclusion of the answer to the question was prejudicial to appellant.   As said above, the burden was on appellant to make it appear

that it was.   He should, therefore, have asked the trial Court—the jury being excluded, if that was deemed necessary—to hear the answer and let it go down upon the record in order that its relevancy and competency might be seen and made to appear.   That the wisdom and expediency of the procedure suggested may be made more apparent, let us suppose that we should hold that the testimony was competent, and send the case back for a new trial for error in excluding it, and, upon the new trial, the witness should answer that appellant said nothing about a contract with his mother.   In what has been said, we must not be understood as holding, even inferentially, that there was or was not error in the ruling.   All we hold is that appellant has not put himself in position to ask that we decide that question. *Safren* v. *Meyer,* 103 S. C. 356, 88 S. E. 3; *Raleigh etc. R. Co.* v. *Jones,* 104 S. C. 332, 88 S. E. 896.   But even if the testimony had been admitted, and had been as favorable to appellant as he would have us conjecture, it would not have been sufficient to affect the result.

Judgment affirmed.